HEATHER L. RICHARDSON, SBN 246517
hrichardson@gibsondunn.com
MICHAEL HOLECEK, SBN 281034
mholecek@gibsondunn.com
BRANDON J. STOKER, SBN 277325
bstoker@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Attorneys for Petitioner OptumRx, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| OPTUMRX, INC., as successor by merger to Catamaran Corporation, and OPTUMRX, INC. in its own right,<br><br>Petitioner,<br><br>v.<br><br>A&S DRUGS LLC, *et al.*,<br><br>Respondents. | CASE NO. 8:22-cv-00468-FLA (JDEx)<br><br>**OPTUMRX, INC.'S OPPOSITION TO RESPONDENTS' MOTION TO STAY**<br><br><br>Judge: Hon. Fernando L. Aenlle-Rocha<br><br>Lead Case No. 8:22-cv-00468-FLA (JDEx) |

1

# TABLE OF CONTENTS

2

Page

3

I.      INTRODUCTION ................................................................................. 7

4

II.     BACKGROUND ................................................................................... 8

5

        A.      RESPONDENTS ARE PARTIES TO TWO CONTRACTS WITH
                OPTUMRX ................................................................................... 8

6

        B.      RESPONDENTS' CONTRACTS WITH OPTUMRX REQUIRE
                ARBITRATION ............................................................................. 9

7

        C.      PROCEDURAL HISTORY ............................................................ 9

8

III.    LEGAL STANDARD .......................................................................... 10

9

IV.     ARGUMENT ........................................................................................ 11

10

        A.      THE "ORDERLY COURSE OF JUSTICE" DOES NOT
                WARRANT A STAY .................................................................... 12

11

                1.      THE *PLATT* AND *COPPER BEND* APPEALS DO NOT
                        INVOLVE IDENTICAL ISSUES ...................................... 13

12

                2.      PRIOR DECISIONS IN FAVOR OF OPTUMRX
                        PRECLUDE COLLATERAL ESTOPPEL .................... 20

13

                3.      THIS COURT WILL HAVE TO DECIDE IN THE FIRST
                        INSTANCE AND AS A MATTER OF FEDERAL LAW
                        THE EFFECT OF *VIKING RIVER CRUISES V. MORIANA* ........ 22

14

15

        B.      RESPONDENTS HAVE NOT ESTABLISHED CLEAR
                HARDSHIP JUSTIFYING A STAY ............................................ 23

16

        C.      OPTUMRX WOULD BE DAMAGED BY A STAY ........................... 24

17

V.      CONCLUSION .................................................................................... 25

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

OPTUMRX'S OPPOSITION TO RESPONDENTS' MOTION TO STAY

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AAMH Pharm. v. OptumRx,*
  2019 WL 13152208 (Ventura Cnty. Sup. Ct. Apr. 22, 2019) ................................. 22

*Abernathy v. S. California Edison,*
  885 F.2d 525 (9th Cir. 1989) ..................................................................................... 25

*Alascom, Inc. v. ITT N. Elec. Co.,*
  727 F.2d 1419 (9th Cir. 1984) ................................................................................... 25

*American Family Mutual Insurance Co. v. Savickas,*
  193 Ill. 2d 378 (2000) ................................................................................................ 14

*Appling v. State Farm Mut. Auto. Ins. Co.,*
  340 F.3d 769 (9th Cir. 2003) ..................................................................................... 20

*Armendariz v. Foundation Health Psychcare,*
  24 Cal. 4th 83 (2000) ................................................................................................. 18

*Avery v. Integrated Healthcare Holdings,*
  218 Cal. App. 4th 50 (2013) ...................................................................................... 16

*Bajwa v. Metro. Life Ins. Co.,*
  208 Ill. 2d 414 (2004) ................................................................................................ 20

*Burgess v. Tesoro Refining and Marketing Co.,*
  2010 WL 11553015 (C.D. Cal. Dec. 8, 2010) ........................................................... 13

*In re Cintas Corp. Overtime Pay Arbitration Litig.,*
  2009 WL 1766595 (N.D. Cal. June 22, 2009) ............................................................ 12

*Collins v. D.R. Horton, Inc.,*
  505 F.3d 874 (9th Cir. 2007) ..................................................................................... 24

*Copper Bend Pharmacy, Inc. v. OptumRx, Inc.,*
  No. 5-22-0211 (Ill. App. Ct.) ....................................................................................... 7

*Dependable Highway Express, Inc. v. Navigators Ins. Co.,*
  498 F.3d 1059 (9th Cir. 2007) ................................................................................... 11

*Duran v. AT & T Corp.,*
  2001 WL 1334280 (S.D. Ohio Aug. 22, 2001) ......................................................... 15

*Emp'rs Ins. Co. of Wausau v. Hartford*,
  2018 WL 6330425 (C.D. Cal. Dec. 3, 2018) ........................................................... 11

*F.T.C. v. E.M.A. Nationwide, Inc.*,
  767 F.3d 611 (6th Cir. 2014) ................................................................................ 23

*Flores v. Transamerica HomeFirst, Inc.*,
  93 Cal. App. 4th 846 (2001) ........................................................................... 14, 15

*Franco v. Greystone Ridge Condo.*,
  39 Cal. App. 5th 221 (2019) ................................................................................. 16

*Grabowski v. Robinson*,
  817 F. Supp. 2d 1159 (S.D. Cal. 2011) ................................................................ 17

*Hall v. AT & T Mobility LLC*,
  608 F. Supp. 2d 592 (D.N.J. 2009) ...................................................................... 15

*Hardy v. Johns-Manville Sales Corp.*,
  681 F.2d 334 (5th Cir. 1982) ................................................................................ 20

*Harrison v. Celotex Corp.*,
  583 F. Supp. 1497 (E.D. Tenn. 1984) .................................................................. 21

*Heritage Provider Network, Inc. v. Cmty. Fam. Care Med. Grp. IPA, Inc.*,
  2021 WL 4184908 (C.D. Cal. July 23, 2021) ................................................. 10, 22

*Hicks v. Progressive Cas. Ins. Co.*,
  2014 WL 12610144 (C.D. Cal. Sept. 29, 2014) .................................................... 19

*Lockyer v. Mirant Corp.*,
  398 F.3d 1098 (9th Cir. 2005) ............................................................. 10, 12, 23, 24

*Louisiana Power & Light Co. v. City of Thibodaux*
  360 U.S. 25 (1959) ................................................................................................ 24

*Lucido v. Superior Court*,
  51 Cal. 3d 335 (1990) ..................................................................................... 13, 20

*Madden v. Kaiser Found. Hospitals*,
  17 Cal. 3d 699 (1976) ........................................................................................... 17

*Maslo v. Ameriprise Auto & Home Ins.*,
  227 Cal. App. 4th 626 (2014) .............................................................................. 19

Gibson, Dunn & Crutcher LLP

4

*Meadows v. Dickey's Barbecue Rests.*,
    144 F. Supp. 3d 1069 (N.D. Cal. 2015) ................................................................ 17

*MHA, LLC v. Unitedhealth Grp.*,
    2017 WL 1095036 (D.N.J. Mar. 23, 2017) ........................................................... 21

*Mission Specialty Pharm. v. OptumRx*,
    154 F. Supp. 3d 453 (W.D. Tex. 2015) ......................................................... 21, 22

*Monster Energy Co. v. Integrated Supply Network, LLC*
    2020 WL 13302381 (C.D. Cal. Oct. 14, 2020) ..................................................... 24

*Morales v. Lexxiom, Inc.*,
    2010 WL 11507515 (C.D. Cal. Jan. 29, 2010) ..................................................... 11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ............................................................................................ 7, 12

*Nandorf, Inc. v. Applied Underwriters Captive Risk Assurance*
    410 F. Supp. 3d 882 (N.D. Ill. 2019) ................................................................... 20

*Paduano v. Express Scripts*,
    55 F. Supp. 3d 400 (E.D.N.Y. 2014) ............................................................ 21, 22

*Park Irmat Drug Corp. v. OptumRx*,
    152 F. Supp. 3d 127 (S.D.N.Y. 2016) .......................................................... 21, 22

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979) ............................................................................................ 20

*Peck v. Cnty. of Orange*,
    528 F. Supp. 3d 1100 (C.D. Cal. 2021) ............................................................... 12

*Platt, LLC v. OptumRx, Inc.*,
    No. A163061 (Cal. Ct. App.) ................................................................................. 7

*Preston v. Ferrer*,
    552 U.S. 346 (2008) ............................................................................................ 12

*Ramos v. Superior Court*,
    28 Cal. App. 5th 1042 (2018) .............................................................................. 17

*Salgado v. Carrows Rests.*,
    33 Cal. App. 5th 356 (2019) ................................................................................ 16

Gibson, Dunn &
Crutcher LLP

5

*Sandoval v. Superior Court*,
    140 Cal. App. 3d 932 (1983) ................................................................. 7, 21

*Sanfilippo v. Match Group*,
    2021 WL 4440337 (9th Cir. 2021) ............................................................. 16

*Spencer S. Busby, APLC v. BACTES Imaging Sols., LLC*,
    74 Cal. App. 5th 71 (2022) ........................................................................ 18

*Tennison v. California Victim Comp. & Gov't Claims Bd.*,
    152 Cal. App. 4th 1164 (2007) .................................................................. 20

*Viking River Cruises, Inc. v. Moriana*
    No. 20–1573, 2022 WL 2135491 (S. Ct. June 15, 2022) .................................. 22, 23

*W. Emps. Ins. Co. v. Jefferies & Co.*,
    958 F.2d 258 (9th Cir. 1992) ..................................................................... 25

*Youngblood v. CVS Pharm.*,
    2021 WL 3188302 (C.D. Cal. May 25, 2021) ............................................... 24

**Statutes**

9 U.S.C. § 4 .................................................................................................. 11

Cal. Civ. Proc. Code § 1913 .......................................................................... 13

**Other Authorities**

18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4425
    (3d ed.) ................................................................................................. 13

# I.    INTRODUCTION

The Federal Arbitration Act requires courts to "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). Stays are disfavored because they "frustrate[] the statutory policy of rapid and unobstructed enforcement of arbitration agreements." *Id.* at 23 (holding that trial court abused its discretion in granting a stay).

Respondents have not met their burden in seeking to stay OptumRx's petition to compel arbitration. In fact, Respondents' motion addresses only *one* of the three stay factors identified by the Ninth Circuit. Respondents fail to argue that they would suffer any prejudice absent a stay, which is a touchstone criterion for granting a stay. This is reason enough to deny their motion.

Further, Respondents claim a stay is warranted because two state-court cases—*Platt, LLC v. OptumRx, Inc.*, No. A163061 (Cal. Ct. App.) and *Copper Bend Pharmacy, Inc. v. OptumRx, Inc.*, No. 5-22-0211 (Ill. App. Ct.)—"could preclude" OptumRx from relitigating certain issues with respect to its arbitration agreements. Mot. at 16. But collateral estoppel cannot possibly apply. Both the parties and the contracts in this case differ from those in *Platt* and *Copper Bend*. Indeed, a finding on unconscionability in an unrelated matter cannot bind different parties as a matter of law because unconscionability turns on the identity of the parties, their wealth and sophistication, the circumstances of contract formation, and other factors—all of which differ in this case. Further, offensive non-mutual collateral estoppel is inappropriate because several other courts have rejected unconscionability challenges to OptumRx's arbitration agreements and compelled the parties to arbitrate. Respondents cannot cherry-pick decisions they like, and ignore the ones they don't like, in a misguided attempt to invoke collateral estoppel. *See Sandoval v. Superior Court*, 140 Cal. App. 3d 932, 944 (1983) ("There seems to be something fundamentally offensive about

depriving a party of the opportunity to litigate the issue again when he has shown beyond a doubt that on another day he prevailed.").

OptumRx respectfully requests that the Court deny Respondents' motion to stay and permit the parties to complete briefing on OptumRx's petition to compel arbitration—a briefing schedule that both parties agreed to just last month.  Dkt. 14.

## II.  BACKGROUND

### A.  Respondents Are Parties to Two Contracts with OptumRx

Respondents each operate one or more pharmacies that fill prescriptions for customers who are covered by various health plans.  Respondents contracted with OptumRx to access its network of health plans and increase their customer base and revenues.  Respondents' relationship with OptumRx is governed by two contracts.

*First*, all Respondents are parties to a Provider Agreement that gives them access to OptumRx's network.  *See* Arita Decl., Dkt. 26-4, Ex. D; *id.*, Dkts. 21-1–21-28, Exs. E–FF.  Nearly all Respondents use powerful contracting agents—called pharmacy services administrative organizations ("PSAOs")—to negotiate their Provider Agreements with OptumRx.  Arita Decl., Dkt. 26 ¶ 5; *id.*, Dkt. 26-4, Ex. D. PSAOs are owned by multi-billion companies, including drug suppliers Cardinal Health, McKesson, and AmerisourceBergen.  Arita Decl., Dkt. 26 ¶ 5.  PSAOs have substantial bargaining power vis-à-vis OptumRx and negotiate the best possible terms for their member pharmacies.  *See* Hyman Decl., Dkt. 28 ¶¶ 17, 18.  Indeed, 262 of the 267 Respondents in this case used PSAOs to negotiate their Provider Agreements—all of which expressly state that the PSAOs are contracting agents for Respondents.  *See generally* Arita Decl. Dkt. 26-4, Ex. D; *id.*, Dkts. 21-1–21-23, Exs. E–AA.  The other 5 pharmacies negotiated their own Provider Agreements directly with OptumRx.  *Id.*, Dkt. 26 ¶ 50.

*Second*, all Respondents are bound by the OptumRx Provider Manual, which explains how pharmacies submit claims and get paid for their claims.  Here, all Respondents have asserted breach-of-contract claims against OptumRx *based on the*

*Provider Manual*, thus conceding they are parties to that contract.  Holecek Decl., Dkts. 25–1–25-2, Exs. A–B.

OptumRx updates the Provider Manual from time to time, and notifies all Respondents and their PSAOs of each update.  Arita Decl., Dkt. 26 ¶ 14.  Each updated version of the Provider Manual supersedes all prior versions.  *Id.*, Dkt. 26-1, Ex. A at 12; Dkt. 26-2, Ex. B at 16; Dkt. 26-3, Ex. C at 114.

**B.    Respondents' Contracts with OptumRx Require Arbitration**

All relevant versions of the Provider Manual include a dispute resolution provision, which explains the steps the parties must take if a dispute arises.  Initially, "the parties will work in good faith . . . to resolve any and all issues, disputes, or controversies between them."  Arita Decl., Dkt. 26-2, Ex. B at 25.  "[T]he party asserting the Dispute shall provide written notice to the other party identifying the nature and scope of the dispute."  *Id.*  "If the parties are unable to resolve the Dispute within thirty (30) days after such notice is provided, then either party may request in writing a meeting or telephone conference to resolve the Dispute."  *Id.*  And "if a representative of [a] party . . . certifies in writing that . . . (i) the Dispute was not resolved after faithfully following the procedures" or "(ii) the other Party to the dispute did not fully comply with the procedures," the "party may commence an arbitration."  *Id.*

All but one of the Provider Agreements also include arbitration provisions that are binding on Respondents.  *See* Arita Decl., Dkts. 21-1–21-2, 21-4–21-28, Exs. E–F, H–FF.  Only one Provider Agreement (with a PSAO named Elevate) does not contain an arbitration agreement.  *Id.*, Dkt. 21-3, Ex. G.  But the Elevate Provider Agreement states that the Provider Manual (which does include an arbitration agreement) is binding on its member pharmacies.  *Id.*, Arita Decl., Dkt. 21-3, Ex. G at 245.

**C.    Procedural History**

In December 2021, Respondents notified OptumRx of a dispute over OptumRx's reimbursement of prescription drugs.  Holecek Decl., Dkt. 25-1, Ex. A; *id.*,

Dkt. 25-2, Ex. B.  The parties met and conferred (as required by the Provider Manual's dispute-resolution provision) but could not resolve their disputes.  OptumRx informed Respondents of their obligation to arbitrate their disputes.  But Respondents refused to arbitrate and stated they would only resolve the parties' disputes in court.  *Id.*, Dkt. 25 ¶ 5.

OptumRx filed petitions to compel arbitration in this Court between March 29, 2022 and March 31, 2022.  Dkt. 24 at 9.  Upon request from the Court, the parties met and conferred regarding consolidation of OptumRx's petitions and a briefing schedule.  At no time did Respondents ever disclose any plans to stay this case—either to OptumRx or the Court.  After the parties submitted their joint report and stipulation (which, again, never mentioned a stay), the Court consolidated OptumRx's petitions and entered a briefing schedule:  OptumRx's consolidated supporting memorandum was due on May 20, 2022, Respondents' opposition is due on July 19, 2022, OptumRx's reply is due on August 16, 2022, and the hearing will be held on September 9, 2022.  Dkt. 18.

On June 10, 2022, Respondents filed a motion to stay the proceedings pending two appeals involving different pharmacies in different courts.  Dkt. 39.

### III.   LEGAL STANDARD

A district court determines whether to exercise its "discretionary authority to stay proceedings" by weighing "the competing interests which will be affected by the granting or refusal to grant a stay." *Heritage Provider Network, Inc. v. Cmty. Fam. Care Med. Grp. IPA, Inc.*, 2021 WL 4184908, at *1 (C.D. Cal. July 23, 2021) (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)).  "Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.* (quoting *Lockyer*, 398 F.3d at 1110).

"In general, the party seeking a stay bears the burden of establishing that a stay is appropriate." *Morales v. Lexxiom, Inc.*, 2010 WL 11507515, at \*11 (C.D. Cal. Jan. 29, 2010). "[I]f there is even a fair possibility that the stay . . . will work damage to some one else, the stay may be inappropriate absent a showing by the moving party of hardship or inequity." *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (citation and quotation marks omitted). And a "stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time," such that the stay is not "indefinite in nature." *Id.* (citations omitted).

## IV.   ARGUMENT

As a threshold matter, Respondents incorrectly suggest that OptumRx's petition is unripe because OptumRx "preemptively seeks to compel arbitration of claims that have yet to be asserted." Mot. at 7; *see also* Mot. at 2. OptumRx's petition is ripe under both the FAA and the parties' agreement.

Under the FAA, a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed[.]" 9 U.S.C. § 4. Where, as here, a party refuses to abide by an arbitration agreement, the dispute is ripe. The refusing party has effectively breached the agreement, and the non-breaching party may petition the court for an order directing both parties to resolve their dispute in arbitration. *See, e.g.*, *Emp'rs Ins. Co. of Wausau v. Hartford*, 2018 WL 6330425, at \*1–\*2 (C.D. Cal. Dec. 3, 2018). OptumRx's petition is not "preemptive" under the FAA. *See* Mot. at 7.

Further, arbitration is the next step in the parties' dispute-resolution protocol. Under the Provider Manual, the parties must resolve their disputes by giving notice of any claims, then engaging in informal dispute resolution, and then arbitrating. *Supra* at 7. Respondents followed the first two steps of that protocol, but then refused to arbitrate and stated they would only resolve their disputes in court. *Supra* at 7–8.

There is nothing preemptive about requiring the parties to complete the dispute-resolution steps they agreed to.

In any event, Respondents have not carried their burden to stay this case. Courts in this Circuit apply three "factors described by the Ninth Circuit in *Lockyer*: (1) the possible damage which may result from the granting of a stay, (2) the hardship or inequity which a party may suffer [if the case is allowed] to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Peck v. Cnty. of Orange*, 528 F. Supp. 3d 1100, 1106 (C.D. Cal. 2021) (quoting *Lockyer*, 398 F.3d at 1110) (quotation marks omitted). Respondents address only one of those factors—but all three militate against a stay.

## A. The "Orderly Course of Justice" Does Not Warrant a Stay

Congress's "clear intent" in the FAA was to "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22. Accordingly, the FAA "call[s] for an expeditious and summary hearing, with only restricted inquiry into factual issues[.]" *Id.*; *see also Preston v. Ferrer*, 552 U.S. 346, 357 (2008) (holding that "[a] prime objective of an agreement to arbitrate is to achieve streamlined proceedings and expeditious results," and ruling that the FAA preempted a state-law rule that would have required an arbitrable dispute to be heard by an agency first).

When a party has petitioned to compel arbitration, a stay "frustrate[s] the statutory policy of rapid and unobstructed enforcement of arbitration agreements." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 23. Accordingly, "stays of arbitration are disfavored." *In re Cintas Corp. Overtime Pay Arbitration Litig.*, 2009 WL 1766595, at *5 (N.D. Cal. June 22, 2009).

Here, Respondents offer only *one* reason why they believe a stay would further the "orderly course of justice"—they claim that the pending appeals in *Platt* and *Copper Bend* "could" preclude OptumRx from relitigating certain issues in this case.

Mot. at 16.  Respondents do not cite a single case—from any jurisdiction in the country—in which a court stayed a petition to compel arbitration because of the possibility that a different case might have preclusive effect.  And Respondents' superficial collateral-estoppel analysis is wrong—neither *Platt* nor *Copper Bend* will have preclusive effect in this case.

**1.    The *Platt* and *Copper Bend* Appeals Do Not Involve Identical Issues**

"In a diversity action, the court applies the collateral estoppel and choice-of-law rules of the forum state."  *Burgess v. Tesoro Refining and Marketing Co.*, 2010 WL 11553015, at *1 (C.D. Cal. Dec. 8, 2010).  Under California law, courts determine the preclusive effect of judgments based on the law of "the state where it was made[.]"  Cal. Civ. Proc. Code § 1913(a).  Thus the preclusive effect of *Platt*, if any, would be based on California law, and *Copper Bend*'s would be based on Illinois law.

Under both California and Illinois law, a prior judgment can be given collateral estoppel effect only if the issue sought to be precluded is "identical to that decided in a former proceeding."  *Lucido v. Superior Court*, 51 Cal. 3d 335, 341 (1990); *accord American Family Mutual Insurance Co. v. Savickas*, 193 Ill. 2d 378, 387 (2000).[1]  An issue is identical for collateral estoppel purposes if "the same general legal rules govern both cases and . . . the facts of both cases are indistinguishable as measured by those rules."  18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4425 (3d ed.).

---

[1] The remaining requirements under California law are that the identical issue was "actually litigated in the former proceeding," "necessarily decided in the former proceeding," and "final and on the merits"; and "the party against whom preclusion is sought [is] the same as, or in privity with, the party to the former proceeding."  *Lucido*, 51 Cal. 3d at 341.  Illinois law similarly requires a final judgment on the merits and that the party against whom the estoppel is asserted be a party or in privity with a party to the prior adjudication.  *Savickas*, 193 Ill. 2d at 387.  Since the issues here are not identical, collateral estoppel does not apply.  OptumRx reserves all arguments regarding the other collateral-estoppel factors.  For example, because the *Platt* and *Copper Bend* appeals have not been decided, it is impossible to tell whether any issues in those cases were "necessarily decided."

Gibson, Dunn & Crutcher LLP

OPTUMRX'S OPPOSITION TO RESPONDENTS' MOTION TO STAY

Here, the issues in *Platt* and *Copper Bend* are far from identical to the issues in this case. Indeed, as a general matter, unconscionability disputes are *never* identical because unconscionability turns on the circumstances of the parties (including, for example, their sophistication, wealth, and size). In *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 852 (2001), the court held that the defendant was not collaterally estopped from arguing an arbitration agreement was enforceable, even though the agreement was "virtually identical" to an agreement another court had found unconscionable in a prior case with different plaintiffs. The court held that "if the relevant facts in the two cases are separable, even though they be similar or identical, collateral estoppel does not govern the legal issues which recur in the second case"—even if "instrument[s] or transaction[s]" are "identical." *Id.* Because the documents "were signed by different parties under different circumstances," collateral estoppel did not apply. *Id.*

Here, *Platt* and *Copper Bend* cannot have preclusive effect for at least three reasons:

*First*, the parties are different. None of the Respondents in this case is a plaintiff in *Platt* or *Copper Bend*. And pharmacies in general are not similarly situated. Some of the Respondents in this case operate a single pharmacy location. Others own and operate dozens of pharmacies. *See* Arita Decl., Dkt. 26-4, Ex. D. Many Respondents had PSAOs owned by multi-billion-dollar companies negotiate their contracts with OptumRx, while five Respondents negotiated their own contracts. Arita Decl., Dkt. 26 ¶ 50. And some Respondents appear to have entered into franchise relationships with PSAOs in order to take even greater advantage of PSAOs' sophistication and bargaining power. Hyman Decl., Dkt. 28 ¶ 21 & n.17 (explaining that Medicine Shoppe and Medicap brands are franchise programs offered by Cardinal Health); Arita Decl., Dkt. 26-4, Ex. D (showing that a number of Respondents contracted with Medicine Shoppe and Medicap).

Because Respondents vary in terms of their sophistication, wealth, and size, and

the circumstances under which they contracted with OptumRx also vary, the decisions in *Platt* and *Copper Bend* cannot have preclusive effect, even if the contracts were identical (and they were not). *See Flores*, 93 Cal. App. 4th at 851–52; *Hall v. AT & T Mobility LLC*, 608 F. Supp. 2d 592, 601 (D.N.J. 2009) (collateral estoppel did not apply even though "multiple California courts ha[d] found [the] provision and others like it to be unconscionable," because "[t]he finding that a class waiver provision is unconscionable is fact-specific" and thus there was "no 'identity of issues'").

   *Second*, the arbitration agreements in the relevant Provider Manuals are different between the cases.  In this case, OptumRx moved to compel arbitration under the 2022 Provider Manual.  By contrast, *Platt* involves the 2016–2020 versions of the Provider Manual and *Copper Bend* involves the 2015–2020 versions of the Provider Manual. The 2022 version differs in several ways from those earlier versions.  For the Court's convenience, OptumRx has attached Exhibit A—a redline comparison showing differences between the 2015 and 2022 arbitration provisions.  For example, the severability provision has been revised.[2]  Further, the 2022 version provides for different discovery procedures.  Arita Decl., Dkt. 26-2, Ex. B at 26.  And the delegation provision has been updated.  *Id.* at 25.  These contract provisions relate directly to Respondents' unconscionability challenges; accordingly, rulings in *Platt* and *Copper Bend* will not have preclusive effect.  *See Duran v. AT & T Corp.*, 2001 WL 1334280, at *11 (S.D. Ohio Aug. 22, 2001) (no collateral estoppel because the first case was based on an earlier version of the agreement, which was subsequently revised, and thus "the different contract terms in the . . . later agreements were not actually raised and litigated" in the prior case).

   Respondents argue that the 2015–2020 Provider Manuals apply to their claims

---

[2]  In *Platt* and *Copper Bend*, the plaintiffs argue that the parties' agreement to delegate was not clear because the severability provision contains one reference to a "court" potentially deciding whether the arbitration proceeding is "binding."  The severability provision in the 2022 Provider Manual contains no such language. Arita Decl., Dkt. 26-2, Ex. B at 27.

in this case.  Mot. at 7–8, 11.  But that is incorrect.  The 2022 Provider Manual supersedes all prior versions and applies to "any and all issues."  Arita Decl., Dkt. 26-2, Ex. B. at 25.  That means it applies to *all* of the parties' disputes, even claims that already accrued.  *See Salgado v. Carrows Rests.*, 33 Cal. App. 5th 356, 361 (2019); *Franco v. Greystone Ridge Condo.*, 39 Cal. App. 5th 221, 228–30 (2019) (arbitration provision covering "any and all claims" included "already accrued claims" because there was "no language containing a limitation or restriction based on the age of covered claims").  Respondents rely on a narrow exception to that rule that applied when one party breached the covenant of good faith and fair dealing by selectively modifying an arbitration agreement to a contract *after claims had been filed*.  *Compare Avery v. Integrated Healthcare Holdings*, 218 Cal. App. 4th 50, 61–63 (2013), *with Sanfilippo v. Match Group*, 2021 WL 4440337, at *3 (9th Cir. 2021).  That is not what happened here, and the 2022 Provider Manual applies to all the parties' claims.

Even under Respondents' incorrect view of the law, the 2015–2020 Provider Manuals would only apply (at most) to claims that accrued in 2015–2020.  Respondents have submitted reimbursements to OptumRx since 2020, including in 2022.  Bates Decl., Dkt. 27-1, Ex. A.  Respondents do not contend that the 2015–2020 Provider Manuals at issue in *Platt* and *Copper Bend* have any bearing on claims arising in 2021 and 2022.

*Third*, the parties' contracts also consist of Provider Agreements, which PSAOs negotiated on behalf of nearly all Respondents.  *Supra* at 6.  Since the Provider Agreements are bargained for as part of arms-length negotiations, the terms vary depending on the PSAO a pharmacy contracts with.  Arita Decl., Dkt. 26 ¶ 17.  While a number of the 267 Respondents here contracted with the same PSAOs as the pharmacies in *Platt* and *Copper Bend*, others contracted with different PSAOs, such as Innovatix, Hometown Pharmacies, and Focus Script.  *See* Arita Decl., Dkt. 26-4, Ex. D.  Thus, this case involves Provider Agreements that are not at issue in *Platt* and *Copper Bend*.

Respondents ignore the important differences in parties, their circumstances, and the contract language at issue in *Platt* and *Copper Bend* and insist there are several "issues" that overlap.  But collateral estoppel will not apply to any of those issues.

<u>Delegation</u>.  In determining whether parties agreed to delegate questions of arbitrability to an arbitrator, courts look at the parties' agreement to delegate, and analyze both the provisions and the surrounding context to discern intent to delegate. *See Meadows v. Dickey's Barbecue Rests.*, 144 F. Supp. 3d 1069, 1078 (N.D. Cal. 2015) (inquiry "should first consider the position of th[e] parties," including their sophistication).  Therefore, even if *Platt* or *Copper Bend* finds that the parties in those cases did not delegate threshold issues of arbitrability to an arbitrator, the inquiry in this case would involve different parties, different circumstances, and different delegation provisions in the relevant agreements.

<u>Unconscionability</u>.  Determining whether an agreement to arbitrate is unconscionable (which OptumRx maintains is for the arbitrator, not the Court) is also a fact-based, party-specific inquiry.  *Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1181 (S.D. Cal. 2011) (unconscionability analysis is party-specific).  Under California law, there must be both procedural and substantive unconscionability, and the analysis of both requirements demands an inquiry into the parties and their relationship.  For example, in assessing procedural unconscionability, courts determine whether a contract is adhesive by examining the relative bargaining power of each party (and their agents, where applicable).  *Madden v. Kaiser Found. Hospitals*, 17 Cal. 3d 699, 711–12 (1976).  Similarly, in assessing substantive unconscionability, whether a forum-selection clause is unconscionable depends on whether the party resisting the forum can show the forum would be unable to accomplish substantial justice in their circumstances.  *Ramos v. Superior Court*, 28 Cal. App. 5th 1042, 1067 (2018) (inconvenience and expense of travelling to agreed-upon forum was not enough to make forum selection unconscionable).  Because unconscionability is a fact-based,

party-specific inquiry, any unconscionability findings in *Platt* or *Copper Bend* would have no collateral estoppel effect here.

Severability.  Whether a court should sever any unconscionable terms is also fact-based and party-specific because it is intrinsically linked to the unconscionability analysis.  Courts should sever unless the presence of numerous unconscionable terms demonstrates "the central purpose of the contract is tainted with illegality." *Armendariz v. Foundation Health Psychcare*, 24 Cal. 4th 83, 124 (2000).  Otherwise, "severance and restriction are appropriate." *Id.*  Since the severance analysis turns on the unconscionability of the agreement, any findings in *Platt* or *Copper Bend* would not collaterally estop OptumRx here.

Agency.  Respondents argue that whether the contracts are enforceable under the principles of agency or ratification are common legal issues.  Mot. at 3–4.  But determining whether an agency relationship exists is also a fact-based, party-specific inquiry.  *Spencer S. Busby, APLC v. BACTES Imaging Sols., LLC*, 74 Cal. App. 5th 71, 82 (2022) (both the "existence of an agency relationship" and "question of whether an agent acted on behalf of a principal" are questions of fact).  OptumRx has submitted substantial evidence—including an expert report—explaining why the Respondents *in this case* have an agency relationship with the PSAOs that expressly negotiated contracts on their behalf.

Respondents' suggestion to the contrary—that PSAOs are not their agents—has no factual basis.  The Provider Agreements themselves state that the PSAOs are Respondents' agents.  For example, the Provider Agreement with EPIC (one of the PSAOs involved in this case) states that EPIC "has the authority to enter into this Agreement *as agent for* and on behalf of [its pharmacy members]" and that each "Pharmacy agrees to and is bound by all [EPIC] obligations set forth in this Agreement."  Arita Decl., Dkt. 20-5, Ex. H at 299.  PSAOs also hold themselves out to the public as contracting agents for their pharmacies.  For example, Health Mart Atlas (which represents 6,600 member pharmacies) states that its "contract review process

assesses four major areas (plan components, financial terms, performance opportunities and contract language), ensuring Health Mart Atlas is entering contracts that are best for [its] member pharmacies' business," and Elevate claims that its "proprietary pharmacy analytics system" allows it to "negotiate smarter payer contracts[.]"  Hyman Decl., Dkt. 28 ¶¶ 37, 39.  OptumRx has submitted sworn testimony demonstrating that "[w]hen a PSAO negotiates a Provider Agreement with OptumRx, it is OptumRx's understanding that the PSAO is negotiating on behalf of all of their affiliated pharmacies that are members of that PSAO."  Arita Decl., Dkt. 26 ¶ 16.  And Professor David Hyman analyzed the relationship between pharmacies and PSAOs and explained why it is indisputable that they have an agency relationship.  *See* Hyman Decl., Dkt. 28 ¶ 18 ("PSAOs primarily function as agents for independent pharmacies in dealing with PBMs").

Respondents offer no evidence that they lack an agency relationship with their PSAOs.  To the extent Respondents do offer such evidence in the future, it would (at most) create a factual dispute that cannot be resolved by looking at prior cases involving different groups of pharmacies and PSAOs.

<u>Retroactivity</u>.  Respondents list "Retroactivity" as one of the legal issues that the cases may have in common.  Mot. at 3.  This is an imprecise definition of the relevant legal issue.  As explained above, the application of the 2022 Provider Manual to all of Respondents' claims will likely turn on whether Respondents can prove that OptumRx breached the covenant of good faith and fair dealing in updating the contract (it did not).  *Supra* at 13–14.  That question is not before the courts in *Platt* and *Copper Bend* (nor could it be, as the 2022 Provider Manual is not at issue in those cases).  Further, whether a party violated the covenant of good faith and fair dealing is a fact-based, party-specific inquiry, and will not have collateral estoppel effect.  *See Hicks v. Progressive Cas. Ins. Co.*, 2014 WL 12610144, at *2 (C.D. Cal. Sept. 29, 2014); *Maslo v. Ameriprise Auto & Home Ins.*, 227 Cal. App. 4th 626, 634 (2014) ("Under

1   this factual scenario, a reasonable jury could find the insurer liable for breach of the

2   covenant of good faith and fair dealing.").

3       Thus, none of the legal issues Respondents invoke to support their motion to

4   stay will collaterally estop OptumRx, because the *Platt* and *Copper Bend* decisions do

5   not involve any issues *identical* to those in this case.

6   **2.     Prior Decisions in Favor of OptumRx Preclude Collateral Estoppel**

7       Courts scrutinize offensive, non-mutual use of collateral estoppel with particular

8   skepticism. *Tennison v. California Victim Comp. & Gov't Claims Bd.*, 152 Cal. App.

9   4th 1164, 1180 (2007).  That is because "even where the threshold requirements of the

10   doctrine are satisfied, collateral estoppel must not be applied to preclude parties from

11   presenting their claims or defenses unless it is clear that no unfairness results to the

12   party being estopped." *Bajwa v. Metro. Life Ins. Co.*, 208 Ill. 2d 414, 433 (2004);

13   *accord Lucido*, 51 Cal. 3d at 342–43.

14       Offensive non-mutual collateral estoppel is "unfair to a defendant if the

15   judgment relied upon as a basis for the estoppel is itself inconsistent with one or more

16   previous judgments in favor of the defendant." *Parklane Hosiery Co. v. Shore*, 439

17   U.S. 322, 330 (1979).  For example, in *Nandorf, Inc. v. Applied Underwriters Captive

18   Risk Assurance*, the plaintiff sought to bar enforcement of a delegation clause in an

19   arbitration agreement, citing two prior cases and arguing the defendant "ha[d] already

20   litigated that issue and lost 'at least two times.'"  410 F. Supp. 3d 882, 891 (N.D. Ill.

21   2019).  The district court rejected that argument, finding that collateral estoppel did

22   "not apply," because "the result of litigation involving [defendants' agreement] ha[d]

23   been mixed." *Id.*

24       Other decisions are in accord.  *See Appling v. State Farm Mut. Auto. Ins. Co.*,

25   340 F.3d 769, 776 (9th Cir. 2003) (no collateral estoppel because prior decision was

26   "contrary to several other well-reasoned holdings in favor of [the defendant]"

27   regarding interpretation of the same contractual provision); *Hardy v. Johns-Manville*

28   *Sales Corp.*, 681 F.2d 334, 346 (5th Cir. 1982) (holding that trial court improperly

applied collateral estoppel when multiple cases had reached different results); *Harrison v. Celotex Corp.*, 583 F. Supp. 1497, 1503 (E.D. Tenn. 1984) ("It seems most inappropriate for this Court to pick out one case upon which the jury reached a verdict for the plaintiff, and accord it preclusive effect, and at the same time to ignore all the others in which equally competent juries have reached the opposite conclusion."); *Sandoval*, 140 Cal. App. 3d at 944.

Here, numerous courts have found for OptumRx on the same issues that Respondents identify in their stay motion.

As to delegation, three courts have found that the same arbitration clause "expressly delegated" the "question of arbitrability" to arbitrators, contrary to the arguments of the plaintiffs in *Platt* and *Copper Bend*. *AAMH Pharm. v. OptumRx*, 2019 WL 13152208, at *5 (Ventura Cnty. Sup. Ct. Apr. 22, 2019); *accord Paduano v. Express Scripts*, 55 F. Supp. 3d 400, 425 (E.D.N.Y. 2014) (enforcing same delegation clause); *MHA, LLC v. Unitedhealth Grp.*, 2017 WL 1095036, at *5 (D.N.J. Mar. 23, 2017) (analyzing same delegation clause in parent company UnitedHealth's arbitration agreement and finding it "difficult to imagine a more clear and unmistakable agreement to arbitrate the issue of arbitrability" than this clause).

Several courts analyzing OptumRx's Provider Agreements have rejected the *Platt* and *Copper Bend* plaintiffs' agency arguments. In *Park Irmat Drug Corp. v. OptumRx*, 152 F. Supp. 3d 127, 133–35 (S.D.N.Y. 2016), the court analyzed an OptumRx Provider Agreement and rejected the pharmacy's argument that OptumRx had not proved agency. The *Park Irmat* court rejected a related argument, also raised by the plaintiffs in *Platt* and *Copper Bend*, that the Provider Agreements were not binding because the pharmacies had not seen the contract. The court found that the plaintiff was bound because an agent's knowledge is imputed to the principal. *Id.* at 135–36; *see also AAMH Pharm.*, 2019 WL 13152208, at *5 (PSAOs negotiated Provider Agreements "on behalf of their respective Pharmacy Plaintiff principals pursuant to the express agency agreements"); *Mission Specialty Pharm. v. OptumRx*,

154 F. Supp. 3d 453, 456 (W.D. Tex. 2015) (finding that Provider Manual applied to dispute between pharmacy and OptumRx because pharmacy's PSAO entered into contract with OptumRx).

With respect to the applicable Provider Manual (and arbitration agreement), the court in *Mission Specialty Pharmacy*, 154 F. Supp. 3d at 461–63, rejected a pharmacy's claim that it was not bound by a revised OptumRx Provider Manual.

Further, the court in *Paduano* made numerous findings in favor of OptumRx.  In addition to finding a clear and unmistakable delegation clause, *see supra* at 19, it found that the plaintiff had "not shown the arbitration clause [was] procedurally unconscionable to any degree," and compelled arbitration.  *Paduano*, 55 F. Supp. 3d at 427.  In addition, it determined that the agreement to arbitrate before a three-arbitrator panel was not unconscionable, nor was "the fact that Optum may unilaterally modify the terms of the Optum Provider Agreement, including the arbitration provision."  *Id.* at 426–27.

Thus, multiple courts have ruled for OptumRx on the same issues identified in Respondents' brief.  Collateral estoppel is not appropriate in these circumstances. Accordingly, a stay would not result in any "simplifying or complicating of issues, proof, and questions of law."  *Heritage Provider Network*, 2021 WL 4184908, at *1.

### 3.   This Court Will Have To Decide in the First Instance and As a Matter of Federal Law the Effect of *Viking River Cruises v. Moriana*

The Supreme Court recently held in *Viking River Cruises, Inc. v. Moriana* that courts cannot invalidate arbitration agreements for prohibiting claim joinder.  No. 20–1573, 2022 WL 2135491, at *10–12 (S. Ct. June 15, 2022).  Specifically, courts "cannot condition the enforceability of an arbitration agreement on the availability of a procedural mechanism that would permit a party to expand the scope of the arbitration by introducing claims that the parties did not jointly agree to arbitrate."  *Id.* at *10. Consolidation "allows plaintiffs to unite a massive number of claims in a single-package suit" which "[a]rbitration is poorly suited" to handle.  *Id.* at *11.

The *Platt* and *Copper Bend* trial courts based several of their unconscionability findings on the arbitration agreements' non-joinder provision.  *See* Cuker Decl., Dkt. 39-3, Ex. 1 at AA1536–37 (*Platt*); *id.*, Dkt. 39-8, Ex. 4 at C2374–75 (*Copper Bend*). *Viking River Cruises* confirms those rulings were wrong.  The *Platt* and *Copper Bend* trial court decisions also relied on the non-joinder provision's purported unconscionability as proof that unconscionability "permeated" the agreement in refusing to sever any supposedly unconscionable provisions to save the parties' core agreement to arbitrate.  Cuker Decl., Dkt 39-3, Ex. 1 at AA1536–37 (*Platt*); *id.*, Dkt. 39-8, Ex. 4 at C2378–79 (*Copper Bend*).  Since Respondents likely will raise similar arguments here, this Court will have to determine the impact of *Viking River Cruises*. And since this is an issue of federal law, not state law, this Court has no reason to wait for, or defer to, the state appellate court rulings (which may not even address the issue).

## B.    Respondents Have Not Established Clear Hardship Justifying a Stay

Respondents acknowledge that any "hardship or inequity" they would suffer absent a stay is relevant to the stay analysis, yet they never argue they would be prejudiced absent a stay.  Mot. at 12 (quoting *Lockyer*, 398 F.3d at 1110).  "'[I]f there is even a fair possibility that the stay . . . will work damage to some one else,' the party seeking the stay '*must* make out a clear case of hardship or inequity.'"  *Lockyer*, 398 F.3d at 1112 (quotation marks omitted) (emphasis added).  This is "[t]he most important factor," *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 628 (6th Cir. 2014)—yet Respondents do not address it.

In any event, Respondents would suffer no hardship.  Whether or not this case is stayed, Respondents ultimately will need to file an opposition brief to Respondents' petition to compel.  If they file their brief before the appeals in *Platt* and *Copper Bend* are decided, as seems likely, they can later bring those decisions to the attention of this Court, as they have done before.  *See, e.g.*, *OptumRx v. Copper Bend Pharmacy, Inc.*, No. 8:20-cv-2145-FLA-JDE, Dkt. 77.

Further, "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity'" for the purpose of the stay analysis. *Lockyer*, 398 F.3d at 1112; *see also Youngblood v. CVS Pharm.*, 2021 WL 3188302, at *2 (C.D. Cal. May 25, 2021) (defendant's "prospective cost of defending" lawsuit "does not constitute a 'clear case of hardship of inequity'"). Indeed, the parties have not propounded any discovery in this case, and because the cases have been consolidated, Respondents only need to file a *single brief* in response to the petition to compel. Respondents do not even try to argue that drafting a single brief would constitute undue hardship.

Respondents' cases are inapposite. In *Monster Energy Co. v. Integrated Supply Network, LLC*, the court stayed the case for one month while the parties engaged in mediation. 2020 WL 13302381, at *2 (C.D. Cal. Oct. 14, 2020). The court emphasized that "[l]itigating a case that may be settled very shortly is not an efficient use of the Court's or the parties' resources," and the "proposed mediation may well dispose of this case entirely." *Id.* The parties here are not engaged in mediation. *Louisiana Power & Light Co. v. City of Thibodaux* involved *Pullman* abstention permitting the Louisiana Supreme Court to interpret a never-before-interpreted state statute. 360 U.S. 25, 27–31 (1959). Neither *Pullman* abstention nor novel interpretations of state law are at issue here. Lastly, in *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 883 (9th Cir. 2007), the Ninth Circuit upheld an arbitration award finding the arbitrators did not manifestly disregard the law when they refused to apply collateral estoppel. The propriety of a stay was not at issue, and the portion cited by Respondents discussed the issue of finality of decisions for collateral estoppel purposes under federal law, which does not apply here.

## C.   OptumRx Would Be Damaged by a Stay

OptumRx bargained for an expeditious dispute-resolution protocol that included an arbitration agreement. As the Ninth Circuit has explained, "one of the principal benefits of [a] bargained-for arbitration process" is "a speedy and efficient dispute

resolution procedure." *Abernathy v. S. Cal. Edison*, 885 F.2d 525, 529 n.15 (9th Cir. 1989).  When courts fail to expeditiously rule on petitions to compel arbitration, parties are "deprived" of those bargained-for rights.  *See id.*; *see also W. Emps. Ins. Co. v. Jefferies & Co.*, 958 F.2d 258, 260 (9th Cir. 1992) ("Western had a right to receive what it bargained for—arbitration according to the terms of its contract with Jefferies."); *Alascom, Inc. v. ITT N. Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984) ("where an order grants a stay of arbitration, one party is deprived of the inexpensive and expeditious means by which the parties had agreed to resolve their disputes").

Here, Respondents and OptumRx have a dispute that is undisputedly covered by the broad arbitration agreements in the Provider Manual and Provider Agreements. And that dispute is significant.  As OptumRx has alleged, the dispute with each Respondent puts more than $75,000 in controversy, for a sum total of over $20 million. Respondents have asserted that OptumRx's reimbursement practices breach the parties' agreements, and that those alleged breaches are continuing and Respondents continue to incur damages each day.  In fact, OptumRx has paid an average of $1 million per Respondent in 2022 alone.  Bates Decl., Dkt 27 ¶ 6.

OptumRx disagrees with Respondents' claims, but OptumRx should not be subjected to indefinite uncertainty regarding its purported liability, particularly while it continues to process Respondents' reimbursement claims and make substantial payments on a daily basis.  OptumRx bargained for an expeditious dispute-resolution process, and Respondents are in breach of that agreement.  Granting a stay would deprive OptumRx of its right to have this dispute expeditiously resolved in arbitration.

## V.    CONCLUSION

For the foregoing reasons, OptumRx respectfully requests that this Court deny Respondents' motion to stay these proceedings.

1    Dated:  June 17, 2022                      GIBSON, DUNN & CRUTCHER LLP

2

3                                                By:  */s/ Heather L. Richardson*

4                                                        Heather L. Richardson

5                                                Attorneys for Petitioner, OptumRx Inc.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPTUMRX'S OPPOSITION TO RESPONDENTS' MOTION TO STAY