Darren Aitken (CA Bar No. 145251)
Aitken Aitken Cohn
3 MacArthur Place
Suite 800
Santa Ana, CA  92707
(714) 434-1424 – Tel
(714) 434-3600 - Fax

Mark R. Cuker (*Admitted Pro Hac Vice*)
mcuker@jacobslawpc.com
JACOBS LAW GROUP
One Logan Square
Suite 1200
Philadelphia, PA 19103
(215) 569-9701 – Tel
(215) 569-9788 - Fax

Attorney for Defendants

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| OPTUMRX, a California corporation, as successor by merger to Catamaran Corporation, and OPTUMRX in its own right,<br><br>　　　　　　Petitioner,<br>　vs.<br><br>A & S DRUGS, LLC, et al,<br><br>　　　　　　Respondents. | Case No.: 8:22-CV-00468-FLA-JDEx<br><br>**ELEVATE PHARMACIES' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PETITIONER'S CONSOLIDATED PETITION TO COMPEL ARBITRATION** |

# INTRODUCTION

Like a scene from the *Wizard of Oz*, Optum's opposition to this motion to dismiss urges the Court to "Pay no attention to that man behind the curtain." In this case, the "man behind the curtain" is Optum's admission in other litigation that Optum "agreed to eliminate the arbitration provisions altogether" from the Elevate-Optum contract. Instead, Optum now argues that even though Elevate is purportedly a "powerful PSAO" with the "leverage" to eliminate an arbitration clause by negotiation, Elevate was powerless to keep Optum from negating their negotiated removal of the arbitration requirement a mere seven months later, when Optum imposed a mandatory arbitration clause in its unilaterally drafted Provider Manual.[1]

Optum's arguments fails for several reasons. First, the issue of whether an agreement to arbitrate exists must be decided by a court as a matter of law.

Second, contrary to Optum's assertion, the Provider Agreement and its Provider Manual do conflict. The *permissive* mediation language of the Provider Agreement conflicts with the *mandatory* arbitration language in the Provider Manual, and, under the express terms of the contract, the *Agreement* controls. Thus,

---

[1] The fact that Optum can negotiate one set of terms with the PSAO that apply to the PSAO per a Provider Agreement, and then turn around and enforce another set of terms in its unilaterally prepared Provided Agreement against the pharmacies which deviate from the negotiated Provider Agreement terms, is proof positive that Optum's characterization of PSAOs as powerful negotiators protecting the pharmacies' interest is false and entirely a fiction.

based on the facts alleged in Optum's Petition, the Elevate affiliated Respondents are not, as a matter of law, contractually required to arbitrate.

## ARGUMENT

### The Dispute Resolution Clause in the Elevate Provider Agreement Eliminated the Arbitration Clause Altogether, Therefore, Any Arbitration Clause in a subsequent Provider Manual Conflicts with the Agreement and is Unenforceable

### The Language of the Documents

Optum moved to compel the Elevate Plaintiffs to arbitrate based on two documents—a Provider Agreement ("Agreement") and a Provider Manual ("Manual"). Dkt. # 23. Optum alleges that both documents apply to the Respondents. Each Document has a "dispute resolution" section, but these sections markedly differ. The dispute resolution section of the Agreement requires only that "the parties will work in good faith to resolve any and all disputes" and that, should a dispute arise "the party asserting the Dispute shall provider written notice thereafter to the other party identifying the nature and scope of the dispute sufficient for a reasonable person to be apprised thereof." If the parties cannot resolve the dispute within 30 days, either party "*may* request in writing a meeting or telephone conference to resolve the dispute." Dkt 20-4 at p. 20 (emphasis added). If that still does not resolve the dispute, then either party may request mediation, but the mediator must be acceptable to both parties. *Id.*

In other words, with the exception of the requirement of the dispute letter and a 30 day period to resolve the dispute, the Agreement's dispute resolution process outlined is entirely voluntary. If a dispute is unresolved, the parties are free to go to court, and assert their constitutional right to a trial by jury, along with the full panoply of discovery and other rights provided under court rules.

And most significantly, the Agreement states that "if there is any conflict between the terms of this Agreement and the [Provider] Manual, the terms and conditions of this *Agreement* shall control." Dkt. 20-4 at p. 21 (emphasis added).[2]

By contrast, the terms of the Provider Manuals' section entitled "Alternative Dispute Resolution and Arbitration" says nothing about "mediation." Instead, it *ab initio* requires the parties to waive their rights to be heard in a court and have a trial by jury, stating forcefully: "**all disputes must be resolved exclusively in arbitration**." *See, e.g.,* 2022 Provider Manual Dkt. #26-2 at p. 15. (emphasis in original).[3]

---

[2] No such provision appears in the other Provider Agreements in issue in this case. *See, e.g.*, Dkt 20-2 at p. 21. Dkt # 20-3 at p. 20.

[3] In its brief, Optum tries to soften the conflict by stating that "either party *may* demand binding arbitration if attempts at informal resolution fail." Dkt # 71 at p. 14 (emphasis added). But the clause clearly states that arbitration is mandatory, and not a matter of choice, unlike the mediation provision in the Agreement.

And not just any arbitration: individual arbitration before a panel of three arbitrators, each with at least 10 years health law experience, and with drastically limited ability to take fact discovery (only five interrogatories and document requests, including subparts). Dkt 26-2.

### Optum has already admitted that the Elevate Agreement Eliminated the Arbitration Provision "Altogether"

In its February 2021 filings in *Prescription Care Pharmacy LLC v. Optum Rx*, Superior Court Orange County No 30-2018-01014006, Optum admitted that the Elevate Agreement eliminated the arbitration provision "altogether." Dkt #58-2 pages 37-40. In *Prescription Care,* Optum argued that the arbitration clause it sought to impose upon the pharmacies was not part of a contract of adhesion, and was, in fact, negotiable. To support this argument, Optum's Declarant, Joshua Van Ginkel, stated:

> OptumRx negotiates pharmacy network agreements…and has, on occasion, ***eliminated the arbitration provision from the pharmacy network agreement altogether.*** The relevant pages of an example of such a contract us attached as Exhibit I below" (attaching the Elevate contract).

Dkt. #58-2 at p. 16:12-17 (emphasis added).

Based on this declaration, Optum's brief in *Prescription Care* argued that "OptumRx . . . has in the past ***agreed to eliminate the arbitration provisions altogether*** based on such negotiations." Dkt. # 58-2 p. 43. (emphasis added).

Optum now argues that "eliminate the arbitration provisions altogether" does not mean what it says. Optum argues that it only means "eliminate the arbitration provision for the approximately 7 months between 'December 9, 2014, (the date the Elevate Agreement was signed, until July 24, 2015 (the date the 2015 Provider Manual became effective.)'" Dkt. # 71 at p. 20. This plainly contradicts the definition of "altogether" which is "*entirely; completely; utterly.*" American Heritage Dictionary of the English Language, 1976. Obviously, if the parties intended to remove the arbitration provision "altogether" then Optum could not unilaterally impose a duty to arbitrate upon the pharmacies seven months later.[4]

Optum now argues that the statements in its *Prescription Care* brief are inadmissible extrinsic evidence. But this is not "extrinsic evidence". Optum's statement that the Elevate Agreement "***agreed to eliminate the arbitration provisions altogether***" is an **admission** that the Elevate pharmacies have no duty to arbitrate.

Admittedly, part of Respondents' offering on this issue *is* extrinsic evidence; Mr. Van Ginkel's testimony in the *Platt* case that the arbitration clause appeared in the template contract which Optum uses with every pharmacy and PSAO, and that

---

[4] It is ironic that, while Optum accuses Respondents of "trying to have it both ways" (Dkt. # 71 at p. 7), Optum devotes reams of paper to arguing that "powerful PSAOs" can negotiate away the arbitration clause; but when one PSAO actually does that, Optum claims it can unilaterally reinstate the clause and the PSAO is powerless to stop it.

Elevate was the only one out of 24 PSAOs and over 2500 pharmacies to negotiate the removal of the arbitration clause from that contract. Dkt. # 58-2 at pp. 7-8.[5]

This extrinsic evidence must be considered by the Court in deciding whether the Provider Manual's dispute resolution clause with a mandatory arbitration clause conflicts with the Elevate Provider Agreement's dispute resolution clause *sans* arbitration; or, as Optum contends, whether those two provisions "dovetail seamlessly". Dkt. # 71 p. 13.

Where parties dispute the meaning of contractual language, "the first question to be decided is whether the disputed language is 'reasonably susceptible' to the interpretation urged by the party." *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.,* 107 Cal.App.4th 516, 132 Cal.Rptr.2d 151, 157 (2003).

> When deciding this question, the trial court must provisionally receive any proffered extrinsic evidence which is relevant to show whether the contract is reasonably susceptible of a particular meaning.... [I]t is reversible error for a trial court to refuse to consider such extrinsic evidence on the basis of the trial court's own conclusion that the language of the contract appears to be clear and unambiguous on its face. *Morey v. Vannucci*, 64 Cal.App.4th 904, 75 Cal.Rptr.2d 573, 578 (1998) (citations omitted). Although extrinsic evidence is generally prohibited "to vary, alter or add to" terms of a contract, *Id*. at 578 n. 4, "[t]he test of admissibility of extrinsic evidence to explain the meaning of a written

---

[5] The fact that only one of 24 PSAOs and 2500 pharmacies was able to negotiate arbitration out of the template contract supports the other Respondents' claim that the template contract had a degree of procedural unconscionability. *See, e.g., Epstein v. Vision Service Plan* Cal App 5th 223, 237 (2020).

> instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible," *Pacific Gas & Elec. Co.*, 69 Cal.Rptr. 561, 442 P.2d at 644. "If in light of the extrinsic evidence the court decides the language is reasonably susceptible to the interpretation urged, the extrinsic evidence is then admitted to aid in ... interpreting the contract." *ASP Properties Group*, 35 Cal.Rptr.3d at 350 (internal quotation marks omitted).

*Halicki Films, LLC v. Sanderson Sales and Marketing*, 547 F.3d 1213, 1223 (9th Cir. 2008 (reversing trial court for failing to consider extrinsic evidence).

Here the proffered evidence—that Elevate specifically negotiated to delete the arbitration clause from the Agreement, combined with the provision making the Agreement controlling in the event of a conflict with a Manual—is relevant to show that the absence of the arbitration clause from the Agreement was not an inadvertent omission, but a deliberate effort to ensure that the Elevate pharmacies would be altogether free of any obligation to arbitrate.

Although general contract law requires courts to "give effect to every part, if reasonably practicable" Cal Civ. Code Sec. 1641, in this case, the two contract documents were not created equal: The Agreement is expressly given priority over the Manual in the event of a conflict. This critical fact alone distinguishes the cases Optum cites, in which the court strained to reconcile the conflicting provisions.

Indeed, in other cases, conflicts between dispute resolution much less stark than here resulted in refusals to enforce mandatory arbitration clauses. For instance, in *Purdue Farms, Inc. v. Design Build Contracting Corp.,* 263 Fed. Appx. 380, 2008 WL 345430 (4th Cir.2008) the first contract document deleted a broad arbitration clause while retaining a mediation clause. The second contract document added a new arbitration clause which applied to "claims 'not resolved by mediation[.]'" *Id.* at 383. The court held that "arbitration [was] mandatory only where the parties mutually agree to mediate the claims, in fact do attempt to mediate the claims, and fail." *Id.* Because, on the facts of that case, the parties never mediated, the plain language of the agreement imposed no duty to arbitrate.

Similarly, in other cases where there were different arbitration clauses in different documents comprising the same contract, courts have refused to impose *any* duty to arbitrate under *any* of the clauses because the conflicting arbitration provisions indicated there was no meeting of the minds. *Ragab v. Howard*, 841 F.3d 1134, 1138 (10th Cir. 2016). *Hawley v. Boysen*, No. 20-2562-JWL, 2021 WL 5140308, at *3 (D. Kan. Nov. 4, 2021); *NAACP of Camden Cty. E. v. Foulke Mgmt. Corp.*, 421 N.J. Super 404, 24 A 3d. 777, 794 (App. Div. 2011)

If there is no agreement to arbitrate when each contract document actually contains an arbitration clause, how can there be one when the controlling document specifically removed the duty to arbitrate?

### The existence of an agreement to arbitrate is for the court to decide

Optum argues that the decision of whether an the Elevate contract contains an agreement to arbitrate must be made by the arbitrator. Optum supports its argument by misrepresenting the holding in *Caremark LLC v. Chickasaw Nation* 43 F. 4th 1021 (9th Cir Aug. 9, 2022). Optum states that, under *Chickasaw*, Respondents' challenge is "to the arbitration agreement as a whole and thus must be resolved by an arbitrator." Dkt. # 71 at p. 10. But the *Chickasaw* court was referring only to challenges to the *validity* of an agreement such as an unconscionability challenge. 43 F. 4th at 1029. On the other hand, **whether** an agreement to arbitrate exists is ***always*** for courts, even in the presence of a delegation clause. *Id.* This motion only argues that no agreement to arbitrate exists. Only a court can decide that.

### The Elevate affiliated Respondents Did Not Waive Their Argument That There is No Agreement to Arbitrate

Optum's contention that Respondents somehow waived the arguments they make now by failing to object to the inclusion of the arbitration provision in the July 2015 Manual is nonsense. There was a single one-size-fits-all unilaterally drafted and issued Manual for all pharmacies—not just the Elevate affiliated pharmacies, but also those affiliated with the other 24 PSAOs and 2500 directly contracted independent pharmacies. To the extent any provisions of the Manual

conflicted only with the Elevate contract, this did not represent a "breach" of the Agreement, especially since Optum agreed (as recently as February 2021) that the Elevate affiliated pharmacies have no duty to arbitrate. Optum did not breach the Agreement until it sought to *enforce* the Manual's arbitration provision—by bringing the 251 petitions to compel arbitration in this case. Respondents have promptly asserted their rights by moving to dismiss the petitions pertaining to the Elevate pharmacies and have waived nothing.

Respectfully submitted,

By: */s/ Mark R. Cuker*

Mark R. Cuker
JACOBS LAW GROUP PC
Darren O. Aitken
AITKEN AITKEN COHN
*Attorneys for Respondents*